CITY OF SIOUX FALLS, Respondent, v.
MARSHALL, Appellant.

(207 N. W. 475.)

(File Nos. 6002, 6037.   Opinion filed February 24, 1926.)

1.  **Intoxicating Liquors—Jury—Criminal Law—Evidence Held for Jury on Question as to Keeping Intoxicating Liquor for Prohibited Purpose.**

    In prosecuton for violating city ordinance by keeping intoxicating liquor for sale trade, barter, or gift, evidence held sufficient for jury on question whether possession was for purpose alleged.

2.  **Intoxicating Liquors—Evidence—Accused in Actual Possession of Liquor in Empty Rooms of Office Building to Which He Had Key and with No Other Occupant of That Floor.**

    Accused, who was seen coming out of vacant rooms in which liquor was found on floor in office building on which his office was only occupied one, and who had keys to other empty rooms containing liquor, held not merely in constructive possession of liquor.

3.  **Criminal Law—Trial—Instructions—Remarks of City Attorney that Accused Was King of Bootleggers and Made His Money Dishonestly Held Not Prejudicial, in View of Instruction to Disregard.**

    In prosecution for violating city ordinance by keeping intoxicating liquor for sale, remarks of city attorney that accused was a king of bootleggers and made his money dishonestly held not prejudicial, in view of instruction to disregard them.

Appeal from Municipal Court of Sioux Falls; Hon. Ransom L. Gibbs, Judge.

Vern Marshall was convicted of a violation of an ordinance of the City of Sioux Falls forbidding possession of intoxicating liquor for sale, barter, trade, or gift and he appeals.   Affirmed.

See, also 48 S. D. 328, 204 N. W. 999.

N. B. Bartlett, of Sioux Falls, for Appellant.

Roy D. Burns, City Attorney, of Sioux Falls, for Respondent.

(2)   To point two of the opinion, Appellant cited:   State v. Giller, 165 N. W. 132; People v. Ninehouse, 198 N. W. 973; Sizemore v. Com., 259 S. W. 337.

Respondent cited:   State v. Dorman, 9 S. D. 528; People v. Vander Heide, 178 N. W. 78.

(3)   To point three, Appellant cited:   State v. Kaufman, 46 S. D. 585; State v. Lamont, 23 S. D. 174; Griffith v. Zetlita, 46 S. D. 45.

Respondent cited:   State v. Pirkey, 22 S. D. 557.

GATES, P. J.   Defendant was arrested, tried, and convicted of the violation of a city ordinance of plaintiff city. It was charged that he had and kept in his possession intoxicating liquor for sale, trade, barter, or gift.   He appeals from the judgment and from an order denying new trial.

[1, 2]   Appellant urges three propositions:

(1)   "The possession of liquor as prohibited by law and as charged in the complaint in this case must be a conscious possession before the defendant can be found guilty."

(2)   "Where the defendant is charged with unlawful possession of intoxicating liquor, the prosecution must prove either actual or constructive possession of the property condemned."

(3)   "Remarks outside of record by the prosecuting attorney during the course of his address prejudicial to defendant."

The first two propositions are easily answered by the view which the jury took upon the question whether the liquor found was in the possession of defendant.   Following is a portion of the statement of facts as set forth in respondent's brief, which, while not undisputed, fairly includes the evidence submitted by respondent.

"On May 18, 1925, at about 9:30 in the morning, a party of police officers, armed with a search warrant, went to search the third floor of the Peck block, located on the corner of Tenth street and Phillips avenue in Sioux Falls.   This is an old business block located in the heart of the Sioux Falls business district.   The first floor of this building was occupied by a bank and the second floor by the Veteran's Bureau.   There was no elevator, so that it was necessary to go up two full flights of stairs to reach the third and top floor of the building.   The building is an old one, and the third floor had been in complete disuse for several months except the northwest room of this third floor.   From record kept by the agent in charge of the leasing of the building it appeared that the northwest room was leased by the defendant, Vern Marshall, and that the defendant had been paying the rent for several months prior to the raid.   The third floor is made up of a great number

of rooms and hallways. All of these rooms were wholly unoccupied and unfurnished, except the northwest room. This northwest room was meagerly furnished with a desk and a few chairs. The room was of ordinary size. The defendant, who had had no regular occupation for many months prior to his arrest, had been seen in and around this room and the third floor many times and at different hours of the daytime during the months preceding his last arrest. This floor was not generaly resorted to by the public, there being no business nor office of any kind on this floor. Several months prior to the raid a labor organization had occupied a room on the third floor, but this organization never had leased the northwest room. Since the removal of the labor organization the defendant, Marshall, had continued to occupy that room. When the officers arrived at the third floor on the morning in question the defendant was seen coming out of a small room on the west side of this third floor. In each of his trouser pockets was a pint bottle with a few drops of alcohol in each, which the defendant attempted to conceal by placing his hands over the pockets. In his hands were a couple of half-pint bottles. There is a sort of closet along the north part of this west room from which the defendant was seen coming. In this closet a half-pint bottle of moonshine was found on a shelf hidden behind some paper plates. It should be noted that this bottle contained 50 per cent. alcohol, which was indentical in percentage with the moonshine whiskey in the jug found in another part of the floor. Another half-pint bottle of alcohol was found on the floor of the same closet concealed behind an old picture frame. In a garbage can in this same west room from which the defendant was seen coming were found several empty alcohol cans and paper containers suitable for holding empty bottles. Numerous empty bottles were found in the west room, which were like the bottles found in the south room, on this same floor.

"When the bottles containing a small quantity of alcohol were taken from the person of the defendant he was arrested and placed in charge of one of the officers, who took him to the northwest room. When in the room the defendant went into the toilet just off this room and attempted to throw away a ring of keys which he had on his person, the officer catching him just as he had the keys in his raised hand preparing to throw them. In ad-

dition to these keys a skeleton key was found in a small cupboard in the northwest room. This skeleton key and one of the Yale keys taken from the defendant's key ring fit double locks on the door to the south room of this third floor. By use of these two keys access was gained by the officers to the south room, which was entirely unfurnished, where an unopened package of a dozen new half-pint bottles, another opened package containing seven or eight new bottles, and an empty gallon glass bottle were found. This glass bottle was identical with the glass bottle in which the gallon of moonshine was found in another part of the third floor. The other bottles were, like the bottle found in the west room, from which the defendant was seen coming. One of the keys found on the defendant opened the door to the northwest room. Access to the third floor is gained by a stairway leading from the west to the east. The northwest room referred to is just north of this stairway, and the west room is just south and east of this stairway. At the head of this stairway is a hallway running north and south. From this hallway access is gained to the east part of the third floor through several different doors, all of which were locked, with the exception of one pair of double doors. One of the officers pulled these double doors open, and, going through, came to a second hallway also extending north and south. This hallway led to another hallway running east and west. The door to the east and west hallway stood open, and behind it, under cover of papers and rubbish, was found a gallon glass jar full of moonshine alcohol. This jar was identical with the jug found in the south room under the lock and key of the defendant. The alcoholic contents of this moonshine was identical with the moonshine found in the west room from which the defendant was seen coming with the bottles on his person when the officers arrested him.

"At the time of making the search there were three or four other men in the first hallway and standing near defendant. These were laboring men who had police records for intoxication, and the natural conclusion to be drawn is that they were customers of the defendant. All of them had been on the floor only a short time and had no connection with the bottles, the alcohol or with the northwest room, as did the defendant. The defendant admitted his connection with the northwest room, and that it was his custom to be about this third floor, and stated that he had been clean-

ing up the northwest room shortly before the officers arrived. The officer who patrols the beat past this building testified that on many occasions and at all times of the day he had seen the defendant in and around the third floor, and that he had seen the defendant going to the third floor with packages like the package of bottles found in the south room at various times prior to the defendant's last arrest. Twice before in the municipal court and once in the federal court the defendant had been convicted of violation of the intoxicating liquor laws, so that the offense in question was the defendant's fourth offense."

There is no room for the application of the term "constructive" as applied to defendant's possession above shown. We are not able to say that the foregoing evidence did not justify the jury in believing that the defendant was in possession of intoxicating liquor for the purpose alleged in the complaint. State v. Work, 201 N. W. 553, 47 S. D. 649.

[3] As to the third point, it appears that the city attorney in his remarks to the jury said:

"That the defendant is a king of the bootleggers; that John Ross is the king of the wholesale bootleggers; that the defendant is king of the retail bootleggers; that the defendant is a bootlegger; that the defendant makes his money dishonestly."

Granting that these remarks were improper, they were promptly excepted to by defendant's counsel, and the trial judge immediately admonished the jury to disregard them and to be goverened by the evidence in the case. Under all the circumstances of this case, we are of the opinion that the rights of appellant were not thereby prejudiced.

Finding no prejudicial error in the record, the judgment and order denying new trial are affirmed.

Note.—Reported in 207 N. W. 475. See, Headnote (1), American Key-Numbered Digest, Intoxicating liquors, Key-No. 238(4), 33 C. J. Sec. 545; (2) Intoxicating liquors, Key-No. 139, 33 C. J. Sec. 505; (3) Criminal law, Key-No. 730(12), 16 C. J. Sec. 2271, 17 C. J. Sec. 3638.